E946loza

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    ROBERTO LOZANO, et al.

4                 Plaintiffs,

5          v.                                14 CV 2345(GBD)

6    RUGFRIT 1350, LLC., et al.,

7                 Defendants.

8    ------------------------------x
                                        New York, N.Y.
9                                       September 4, 2014
                                        11:30 a.m.
10
     Before:
11
                        HON. GEORGE B. DANIELS,
12
                                        District Judge
13
                              APPEARANCES
14
     LEE LITIGATION GROUP, PLLC
15        Attorneys for Plaintiffs
     BY:  C.K. LEE
16
     GORDON & REES, LLP
17        Attorneys for Defendants
     BY:  MARK A. BECKMAN
18        WILLIAM H. WEISMAN
          VINCENT M. AVERY
19

20

21

22

23

24

25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

E946loza

1              (Case called; in open court)

2              THE LAW CLERK:  Will the parties please rise and make

3    their appearances, starting with the plaintiff.

4              MR. LEE:  C.K. Lee for the plaintiff.

5              THE COURT:  Good morning, Mr. Lee.

6              MR. BECKMAN:  Mark Beckman for defendants, your Honor.

7              THE COURT:  Good morning.

8              MR. AVERY:  Vincent Avery for defendants, your Honor.

9              MR. WEISSMAN:  For defendant William Weisman.

10             THE COURT:  Good morning, Mr. Weisman.

11             Mr. Beckman, do you wish to be heard on your motion?

12             MR. BECKMAN:  I do indeed, your Honor.  I did notice

13   that prior counsel stood there.

14             THE COURT:  It will be easier for the court reporter

15   if you use the mic.

16             MR. BECKAN:  No one ever claims they cannot hear me.

17             THE COURT:  Hearing and understanding.

18             MR. BECKMAN:  That's an excellent point.

19             Well, good morning, your Honor.  We're essentially

20   here today because plaintiffs has been overreaching a little

21   bit and I think the motion papers make it clear and I think it

22   is most important to begin on several of the issues related to

23   in particular to the FLSA and federal claims and to the extent

24   we have time later to perhaps also discuss the New York claims.

25   Although, those are pretty clearly briefed.

3

E946loza

1          The bottom line here is plaintiff is essentially

2     arguing that there are two requirements of the FLSA and one of

3     which has not been met.  Two requirements are that, one, you

4     have to give notice that you are taking the tip credit to your

5     tipped employees; and two, that the people who you are giving

6     that tip to or you are taking credit for are people who are

7     appropriately tipped employees, people who are customarily

8     receiving tips in that business and provide direct service to

9     the customers.  Here they are really only making arguments and

10    the only thing pled into that complaint as to that first

11    requirement, whether notice as been properly given that the

12    employer is taking the tip credit for the tipped employee.  As

13    the Court has seen there is no dispute that the defendant --

14    the plaintiff was notified in writing that the employer was

15    taking advantage of the tip credit.  In fact, the plaintiff

16    signed a detailed explanation acknowledging he received it,

17    that he understood, and that he acknowledged the content of

18    that document.

19          Even if the face of that, defendant is essentially

20    making three arguments why that tipped credit notice is not

21    proper under the FLSA.  First, he is saying that the

22    document -- the restaurant employee package didn't inform the

23    plaintiff of his overtime rate.  That is from plaintiff's

24    opposition memo.  Unfortunately for plaintiff that is not what

25    the FLSA requires.  Under the FLSA all you have to do is

E946loza

1    provide the employee of the employer's intention to treat tips

2    as satisfying part of the employee's minimum wage requirements.

3    The document clearly does that.  There is no allegation it

4    doesn't.  Plaintiff is trying to conflate wrongly some of the

5    things that maybe wrong under New York or local law and that

6    simply is inappropriate and does not exist here.  That is

7    plaintiff's first argument.

8           Plaintiff's second argument says under the FLSA the

9    notice was entirely in English even though plaintiff identified

10   his primary language was Spanish and that is somehow improper.

11   Plaintiff then cites a slew of cases supposedly supporting that

12   proposition.  Unfortunately every single one of those cases is

13   different in a material way from the case before you now,

14   namely, everyone of those cases plaintiff specifically alleged

15   in the pleadings that they neither read, understood, or spoken

16   English.  That simply is not the case here.  Here the plaintiff

17   both signed and read -- read and signed the document saying he

18   had received that notice and acknowledged that he understood

19   that notice.  Secondly, there is no allegation in the complaint

20   that plaintiff could not understood, speak or read English.

21   Essentially plaintiff is making a statement without any basis

22   whatsoever that the employee and has no authority for the

23   proposition that where the employee has signed an

24   acknowledgment and where the employee does not allege they

25   cannot speak read or understand the notice that that notice is

E946loza

1  invalid.

2          THE COURT:  Is there a paragraph in the complaint that

3  makes this claim?

4          MR. BECKMAN:  Pardon me?

5          THE COURT:  Is there a paragraph in the complaint that

6  makes that claim?

7          MR. BECKMAN:  No.  It does not exist.

8          The third and final argument, which has equally failed

9  in this collection is that plaintiff argues that the notice he

10  received was invalid "because it does not inform the tipped

11  employee that he or she is entitled to retain all tips received

12  except pursuant to a valid tipped pooling arrangement required

13  by the FLSA."  That third and final argument is wrong for three

14  independent sufficiently -- independent and sufficient bases.

15  First, that is the first time we have heard about it in their

16  opposition memo.  None of that was pled in the complaint.

17  There is nothing in the pleading about this claim at all.  You

18  cannot raise a new claim in an opposition to a motion to

19  dismiss.

20          Second, even if it had been in the complaint, the

21  requirement they are referring to is a safeguard against an

22  employer wrongly dipping into the tip pool.  That is not

23  alleged here and that is not what is going on here.  There is a

24  protection for the employee that if management or some other

25  representative of the employee takes some of the tips, but that

E946loza

is not the case here and that has not been alleged.

Third and finally, this requirement is there to in fact protect tip pooling arrangements under the FLSA. It says that we can in fact "retain all tips received except pursuant to a valid tip pooling arrangement." Here there is no applicability because first there was a valid tip pooling arrangement; and two, this person, particular plaintiff was not the kind of person who received direct tips from customers. He wasn't a waiter. He wasn't a bartender. He was a busser. He was never actually handed any tip ever. There is no allegation he was ever handed a tip, ever. There is no allegation he was ever handed a tip. There is no allegation that he didn't actually receive all of the tips through that tip pooling arrangement. Not one occasion has been identified, not one occasion has been alleged where he received a tip or that tip was somehow taken away from him or that that tip was not obligated to be put into the pool like all other tips.

In the end, all he is alleging is that the defendant did not provide him with a notice of the right he didn't get in the first place. He did not participate in a pool -- sorry. He did participate in a pool and he did not receive tips directly from the customer. In short in this respect the defendants have advised the plaintiff at the start of his employment that they were taking the tip credit. They gave him a detailed explanation of that, he signed it, he acknowledged

E946loza

1    it, and he read it and understood it.  He has not asserted

2    anything in the complaint that indicates he couldn't read that

3    document or that he didn't understand it.  Essentially,

4    plaintiff has failed to state a claim understood the FLSA for

5    the tip notice.

6           Plaintiff's second complain is with respect to the tip

7    pooling itself, the process of tips being pooled so that all

8    employees share.  Here they are saying the valid tip pool under

9    the FLSA is based on the one allegation in the complaint, and

10   just one, where the plaintiff was forced to participate in that

11   tip pool, the pool which was created prior to his employment

12   and still exists subsequent to his employment.  Unfortunately

13   under the FLSA, and frankly under the New York Labor Law as

14   well, employers are perfectly well in their right to create and

15   establish mandatory tip pooling.  They don't need to receive

16   the voluntary participation of an employee.  They simply have

17   to do the tip pool within the bounds of the law, which they did

18   here.  There is a slew of cases, which we cited, and we have

19   more we can produce.

20          In short the bottom line is plaintiff here is trying

21   to challenge the existence of the rule and cites one case to do

22   it.  Shear v. Food Scope America.  Unfortunately for plaintiff,

23   though, the proposition there is really not applicable here

24   because there the Court said, Yes, that was an invalid tip pool

25   because you had management dipping into the pool.  You had

E946loza

 1   people who were not properly nonexempt, people who were not

 2   tipped employees taking a piece of the pie.  That is not the

 3   case here nor has it been alleged here.  That is materially

 4   different.  Here all that they are alleging is that the

 5   plaintiff didn't actually raise his hand and say, Yes, I want

 6   to be in the tip pool.  Plaintiff doesn't have the right to say

 7   yes or no.  Plaintiff is told there is a tip pool and is

 8   explained how it works and plaintiff has to participate like

 9   every other tipped employee.  Here he only personally alleges

10   that he didn't agree to the pool.  Sadly that is just not the

11   law.  So again that claim doesn't give rise to -- that

12   allegation doesn't give rise to a claim and that must be

13   dismissed.

14          Finally, there is really no protection afforded to the

15   plaintiff here based on the documents that have been provided.

16   And there has been some discussion in the papers the Court does

17   have the right and the Court should and must look at the

18   documents that were provided, among them the exhibits showing

19   exactly what the plaintiff saw when he was hired, what he was

20   provided during his employment.  Those are all absolutely

21   integral to the case.  The reality is plaintiff is saying he

22   was not given proper notice.  The documents we have attached

23   were the notices.  It is like saying, We're going to serve a

24   breach of contract; but, please, don't look at the contract.

25   Here plaintiff is trying to say, Well, don't look at that or

E946loza

1    use those.  In reality there could be nothing more integral to

2    a claim for lack of proper tip notice than the notice the

3    plaintiff received and signed.

4          Finally, your Honor, to the extent plaintiff is

5    suggesting that the -- pardon me.

6          THE COURT:  I have two questions.  I wasn't sure what

7    the nature of the overtime dispute was.  There is some

8    reference to overtime that I am not sure if there is a claim of

9    not paying overtime.

10         MR. BECKMAN:  Well, they are saying because they did

11   not receive notice of the tip credit that invalidates the

12   taking of the tip credit, which means they are then entitled to

13   overtime based on the minimum wage they would have received for

14   those hours they can no longer claim from the tip.  All of that

15   stems from that.

16         THE COURT:  I want to make sure I understand.  There

17   is no additional claim that given that the employee worked

18   overtime and that the employer did not pay for that overtime?

19         MR. BECKMAN:  That's not alleged in the complaint.  It

20   has not been raised, even though it would be improper to raise

21   later in opposition.  All of it flows from the basic premise

22   that in theory the plaintiff wasn't -- did not receive proper

23   notification.  As we have described, he did.

24         THE COURT:  I assume that the process is even with the

25   tipped credit for the standard 40 hours or whatever is the rate

E946loza

| | |
|---|---|
| 1 | and then time and a half for overtime? |
| 2 | MR. BECKMAN:  Yeah.  That's correct. |
| 3 | THE COURT:  No dispute there wasn't a different rate? |
| 4 | MR. BECKMAN:  No.  In fact, Exhibit C, which is the |
| 5 | wage notice, it says it will be 8.35, or whatever it is, which |
| 6 | is the time and a half.  So he was informed of that and that is |
| 7 | how it was done.  There is no allegation anywhere in the |
| 8 | pleadings that there is anything wrong with that.  It all flows |
| 9 | from the one mistaken argument that somehow he was due other |
| 10 | things from his notice than he actually received.  He just |
| 11 | wasn't.  He got everything he was supposed to get. |
| 12 | THE COURT:  Tell me what is the nature of Exhibit C? |
| 13 | MR. BECKMAN:  That is the Wage Prevention Act form.  I |
| 14 | believe it's the fifth document.  A is the stuff he got from |
| 15 | the restaurant.  That is there proprietary package of |
| 16 | information. |
| 17 | THE COURT:  A is the notice? |
| 18 | MR. BECKAN:  C are the pay charts from ADP. |
| 19 | THE COURT:  When you say the "pay charts," the pay |
| 20 | charts retained by the employer or the pay charts provided to |
| 21 | the employee? |
| 22 | MR. BECKMAN:  We don't have access to the employee's. |
| 23 | These are the ones that were retained by the employer. |
| 24 | THE COURT:  Is there a question or dispute of whether |
| 25 | there were wage statements provided to the employee? |

E946loza

1          MR. BECKMAN:  I don't think so, but my understanding

2     is that it is not the same format.  These are reports that ADP

3     provides to the employer, which is a different form of the

4     report provided to the employee with their check.  I don't

5     think there is a dispute what we provided is what plaintiff

6     received albeit in a different piece of paper.

7          THE COURT:  It wasn't clear to me from the complaint

8     or from the briefs of whether or not there was a dispute or

9     whether or not there were regular wage statements provided to

10    the employer.

11         MR. BECKMAN:  Remember, your Honor, that is not a

12    requirement of FLSA.  To the extent that would or would not

13    have been something that would be contested -- I don't think it

14    is.  I am sure.  None of that is relevant to the FLSA claims.

15    That may or may not be relevant to the New York Labor Law

16    claims.

17         THE COURT:  What do you say I should do with the New

18    York Labor Law?

19         MR. BECKMAN:  I think you should dismiss those as

20    well.  I didn't have much -- we thought we did a particularly

21    good job in the papers.

22         THE COURT:  It is unclear to me what the nature of the

23    counts, the separate counts are in the complaint.  You believe

24    that all claims are dismissed based on these arguments?

25         MR. BECKMAN:  I do.  Look, I am a pretty blunt guy.  I

E946loza

1    think some are stronger or better or closer.  Yeah, I think we

2    have a much clearer argument on the FLSA claims.  I think the

3    New York law is a little bit amorphous.  I still think we win

4    for the reasons we put in our brief.  It couldn't be clearer to

5    me that certainly under the federal claims, under the FLSA --

6    it is a no-brainer, your Honor.

7         THE COURT:  I am trying to splice out this separate

8    claim.  How do you articulate the New York Labor Law claims as

9    different claims than Fair Labor Standards Act?  What do you

10   think is being alleged under the New York Labor Law?

11        MR. BECKAN:  Well, I don't want to speak for

12   plaintiff.

13        THE COURT:  Right.

14        MR. BECKMAN:  The claim he has alleged --

15        THE COURT:  What do you think you are being given

16   notice of?  What violation do you think you are giving notice

17   of?

18        MR. BECKAN:  I think the reality for the New York

19   Labor Law claims is that he is claiming that parts of the wage

20   notice weren't complete such as the amount of overtime

21   required.  Essentially the things he is trying to claim in the

22   FLSA, which aren't applicable maybe applicable under the New

23   York Labor Law.  I don't think so, but that is the argument he

24   is claiming.

25        THE COURT:  That is why I asked about the wage

E946loza

1  statements.  That is what would be in the wage statements?

2          MR. BECKMAN:  Yes.

3          THE COURT:  So what ways is there a dispute about

4  whether the wage statements provided to the plaintiff were

5  adequate?

6          MR. BECKMAN:  They say that there is not all the

7  information required there.  I think what they are trying to

8  claim in the wage statement for just the New York Labor Law

9  claims is that the way they derive overtime each week was not

10 included in the wage statement.  There are similar arguments on

11 the tip notice; but in just the New York law my understanding,

12 and I am sure I will be corrected, is that the real difference

13 is they are saying in these wage statement claims the amount of

14 overtime that would be given -- again, if you invalided the tip

15 pole because the lack of proper notice -- the amount of

16 overtime they got every single paycheck wasn't given as a line

17 item in the wage statement account.  I think that is what he is

18 trying to say.

19         THE COURT:  What do you say was provided in the wage

20 statements?

21         MR. BECKMAN:  If you look you will see there is a line

22 that says, Tip, OT tip.

23         THE COURT:  I want to make sure I understand the

24 notations.

25         MR. BECKMAN:  We think it does provide all of that.

E946loza

1        THE COURT:  You believe that it provides what?

2        MR. BECKMAN:  The hourly rate, the overtime rate, what

3   they received during the time period.

4        THE COURT:  Give me an example.

5        MR. BECKMAN:  Hold on one second and I will turn to

6   the exhibit.

7        THE COURT:  I didn't understand all the columns.

8        MR. BECKMAN:  Frankly, we're not so sure either.  I

9   may be the wrong guy to ask that particular question.

10        THE COURT:  I said columns, not problems.

11        MR. BECKMAN:  Oh, right.

12        THE COURT:  You have the gross wages.

13        MR. BECKMAN:  If you look, say, to the third column in

14   it says earnings.  You have reg tip, OT tip.

15        THE COURT:  Reg tip would be?

16        MR. BECKMAN:  Reg tip is the regular hourly pay.  You

17   see that says $5.  Minimum wage minus the 2.25.  That is the

18   tip credit amount.  Then you see OT tip, which would be the

19   5-dollar amount for time and a half, which is the overtime

20   amount.

21        THE COURT:  I see.

22        MR. BECKMAN:  Next to it you have the hours worked

23   that week both for the reg tip, which is for overtime and so

24   forth.  So this provides everything we think we need to

25   provide.

E946loza

```
 1              THE COURT:  What are the other notations.  Min tip,
 2    what is that?
 3              MR. BECKMAN:  Honestly, your Honor, I am not exactly
 4    sure.
 5              THE COURT:  Add tip?
 6              MR. BECKMAN:  May I confer with my colleague for a
 7    moment, please?
 8              THE COURT:  Yes.
 9              (Pause)
10              MR. BECKMAN:  My understanding min tip stands for what
11    the minimum amount would be that they would have to
12    additionally pay the plaintiff if for whatever reason the
13    amount of tips he received was below the minimum wage amount.
14    So the company would give him more money to make sure he
15    received at least the minimum wage.  As you see that didn't
16    happen.  At the end you see that that is the spread of hours, I
17    believe.
18              THE COURT:  When you say that didn't happen, I have
19    107.84 in that column.  It looks like it did happen.
20              MR. BECKMAN:  I am sorry.  I apologize.  I misspoke.
21    Right.  Min tip is the amount that is between them add tip
22    would be the amount they need to pay to do that.  As you see
23    they did do that.  I misspoke.  Min tip is the amount between
24    the minimum wage and what they actually received.  Add tip is
25    what the company threw in.  Ad tip is what they actually
```

E946loza

1  received.

2          THE COURT:  I don't understand why the min tip would

3  be 107 and add tip would be 192?

4          MR. AVERY:  Your Honor, my understanding is that the

5  minimum tip line item is essentially the difference between the

6  post-tip credit hourly rate and the minimum wage.  In effect,

7  what conceptually we would need to make up.  The amount of tips

8  the employee would need to receive.  The add tip is what the

9  employee actually received.

10         THE COURT:  So that if the min tip had been more --

11  well, the responsibility is to make sure that the add tip is at

12  least what the min tip is --

13         MR. AVERY:  Exactly, your Honor.

14         THE COURT:  -- would have been.  The hourly rate is

15  the 7.25?

16         MR. AVERY:  Right.

17         THE COURT:  Minimum wage?

18         MR. AVERY:  Correct.

19         THE COURT:  The reg tip is what the rate is to--

20         MR. BECKMAN:  That is the hourly rate but that takes

21  advantage of the 2.25 tip credit.

22         THE COURT:  Which basically means that they pay the

23  5-dollar hourly rate in conjunction with the tips, the regular

24  tips that they would be receiving at least $7.25?

25         MR. BECKMAN:  That's correct, your Honor.

E946loza

1          THE COURT:  The OT tip means that they would have to

2    make time and a half so it would be $8.62.

3          MR. BECKMAN:  That's correct.

4          THE COURT:  And that that would be the amount that

5    they had to be paid in order for the rate and the tips to equal

6    time and a half --

7          MR. BECKMAN:  That's correct.

8          THE COURT:  -- at minimum wage?

9          MR. BECKMAN:  That is the floor essentially.

10          THE COURT:  Right.

11          MR. BECKMAN:  Again, as we said that is purely the New

12    York Labor Law side.  So I am loathe to speak for plaintiff,

13    but that is our understanding what they are claiming.

14          THE COURT:  I will talk to Mr. Lee, but I am not sure

15    what is the dispute about what you think they say is missing.

16          MR. BECKMAN:  Okay.

17          THE COURT:  Can you tell me what you think they say is

18    missing?

19          MR. BECKMAN:  I think what they are saying is that the

20    way the overtime each week was calculated, meaning the hours in

21    any particular week was derived, those were the weeks they

22    derived is missing.

23          THE COURT:  What is missing?

24          MR. BECKMAN:  The way the calculation -- the wage --

25    the calculation of that 2.25 each week is being taken and how

E946loza

1    the overtime is being derived.  Again, I am a little bit

2    confused about it myself.

3            THE COURT:  Let me hear from Mr. Lee.

4            MR. BECKMAN:  Thank you, your Honor.

5            MR. LEE:  Thank you, your Honor.

6            THE COURT:  Go to the podium and start over.

7            MR. LEE:  Good morning, your Honor.  I think the

8    issues here are actually really simple and Mr. Beckman's

9    confusion in interpreting the defendant's earning statement

10   reflects how notice is improper in this case.  So I just wanted

11   to address the issues that has been most recently raised about

12   the invalid earning statement.  Under the New York Labor Law an

13   employee is required to receive the wage statement, otherwise

14   known as a pay stub, that informs him of a number of specific

15   items that the law details one of which is supposed to tell a

16   person the amount of the tip credit that is claimed for the pay

17   period.  That claim is specifically stated in the complaint

18   under paragraph 26, subparagraph II which says, The defendants

19   failed to provide a proper wage statement informing tipped

20   employees of the amount of tip credit taken for each payment

21   period.

22           THE COURT:  Isn't the math simple enough from that

23   statement?

24           MR. LEE:  No.

25           THE COURT:  If you subtract the hourly rate from the

E946loza

1    additional pay, that's the tip credit, isn't it?

2                MR. LEE:  Yes and no, your Honor.

3                THE COURT:  Is it more complicated than that?

4                MR. LEE:  It is more complicated.  Because the earning

5    statement itself is confused.  The earning statements says his

6    pay rate is $5.

7                THE COURT:  Right.

8                MR. LEE:  His pay rate is not $5.  His pay rate is

9    actually 7.25.  The company is claiming an allowance on his

10   compensation.  That is what is not being disclosed to the

11   employee.  So the employee looking at this document just says

12   Mr. Beckman himself was confused and your Honor had a difficult

13   time differentiating the various columns.  This wage statement

14   is difficult for sophisticated lawyers to review.  It's next to

15   impossible for a layperson who is not educated what is going

16   on.

17               THE COURT:  You are only attacking one issue on this

18   wage statement.  First of all, you are not claiming that he

19   didn't get a wage statement.

20               MR. LEE:  That's correct.

21               THE COURT:  You are claiming that this wage statement

22   doesn't say for each pay period exactly how much of the pay,

23   the gross pay, is the tip.  That's your only complaint.

24               MR. LEE:  No.  There are a few things, your Honor.

25   The first thing is that they got his pay rate wrong.  His pay

E946loza

1    rate is 7.25.

2            THE COURT:  It says 7.25.  The bottom line says 7.25.

3            MR. LEE:  That is regarding to his payment for spread

4    of hours.  That is three days of spread of hours' compensation.

5    That is what they are paying him for that.  That is actually

6    confusing also because it says three under "hours," but it

7    actually is intended for three spread of hour payments.  When

8    an employee works a workday that exceeds 10 hours a day in New

9    York, they have to be compensated and extra hour of pay.

10           THE COURT:  I understand that.  The rate of pay is

11   clearly $7.25.  That is the hourly rate of pay.  That's the

12   minimum wage.  Every employee knows that is the minimum wage

13   because every employee gets a form telling them that is the

14   minimum wage and telling them that is what they are entitled

15   to.  It is on the wage statement that 7.25 is the rate that you

16   are going to be paid for that hour.

17           MR. LEE:  Well, it says regular tip says $5.

18           THE COURT:  Right.  Regular tip rate.

19           MR. LEE:  Well, your Honor --

20           THE COURT:  That's clearly explained in Exhibit 1.

21           MR. LEE:  But, your Honor --

22           THE COURT:  It is explained that the formula for this

23   is federal minimum hourly wage $7.25 minus tip credit equals

24   your hourly wage.  Being provided that information and given

25   each one of those numbers, what is it that you are not being

E946loza

1    told?

2              MR. LEE:  First of all, your Honor --

3              THE COURT:  Are you saying if the person is not good

4    at math, they cannot figure out how much of the pay that period

5    went to the tip and how much of it was part of the 5-dollar

6    rate?

7              MR. LEE:  Well, there is a couple problems, your

8    Honor.  Let me back up a little bit.  We're arguing a lot of

9    the substance on this case.  That is okay.  I don't mind doing

10   that but--

11             THE COURT:  I am not arguing the substance.  I am

12   trying to figure out what your allegation is.  That is not what

13   you say in your complaint.  You don't say that specifically in

14   your complaint.  I am giving you an opportunity to explain to

15   me what you really mean.  That is not what is in the complaint.

16   It doesn't say that.  It simply says they didn't give me proper

17   notice.  I am trying to figure out in what way you have alleged

18   that in the facts.  I don't want to get into this, but this is

19   not in your complaint so you don't get the benefit of this

20   explanation if you don't want to discuss what you really mean

21   by these allegations.

22             Let me ask one really important question to start

23   with.  Your complaint has nothing to do with any other

24   deficiency other than the notice.  Would that be a correct

25   statement?

E946loza

1          MR. LEE:  No.

2          THE COURT:  You are not saying that if proper notice

3   was given that they somehow violated the labor laws, if there

4   was proper notice.  You don't claim they under paid anybody if

5   they had proper notice.  You don't claim that they are not

6   paying the overtime if they gave proper tip notice.  You are

7   not complaining that they are stealing the tips.  If they had

8   given proper notice everything that you paid your employee, you

9   are not saying there was anything wrong with what they paid out

10  if they had given the proper notice; is that correct?

11         MR. LEE:  I think the notice issue is --

12         THE COURT:  Answer that question first.

13         MR. LEE:  If --

14         THE COURT:  Answer that.

15         MR. LEE:  It is not the only issue.

16         THE COURT:  What other thing are you saying that they

17  did that is not dependent on whether or not the notice was

18  proper?

19         MR. LEE:  For example, the tip pooling arrangement was

20  improper because there was something that was mandated by the

21  company, right, and it was not something that was agreed upon

22  by the plaintiffs.

23         THE COURT:  What case law says that the employee who

24  gets hired by the employer gets to come in and say, You can't

25  have a tip sharing arrangement unless I agree to it personally?

E946loza

1    Where do you get that?

2            MR. LEE:  Sure.

3            THE COURT:  My understanding of the law is the

4    opposite.  If the employee shows up and says, I want to work

5    here as a busboy, and if the employer says, Okay, I want you to

6    know that this is the way you are paid, that busboys will

7    get -- I would otherwise have to pay you $7.25 an hour, but we

8    have a tip sharing arrangement here so that your base rate is

9    going to be $5 an hour and the additional tips that you are

10   going to share in is going to take you above $7.25 and I am

11   letting you know that.  So if you want to work here, that is

12   the wage you are going to be paid.  You are not arguing that

13   the employee can say, I am going to take the job but I am not

14   going to agree to be paid that way.

15           Is that your argument?  I never heard that.

16           MR. LEE:  No.  The argument about the tip pooling is

17   that in a tip pool the employees themselves are supposed to

18   agree upon the tip sharing arrangement in regards to, for

19   example, who gets what percentage of the allocation of the

20   tips.  Now, the employer is not supposed to mandate that.  It

21   is something that the employees themselves are supposed to

22   agree upon.

23           I will give you an example.  There are situations

24   where -- there are two types of tip a arrangements in a

25   restaurant.  I used to work in a restaurant.  So we would call

E946loza

1    it -- it was a Chinese restaurant so I will translate it

2    loosely.  One arrangement is a capitalist arrangement and

3    another is a socialist.

4              THE COURT:  I understand.

5              MR. LEE:  The capitalist arrangement:  You serve a

6    customer, you get the money.  The socialist arrangement is

7    pooling.  So if a restaurant is mandating a tip pooling

8    arrangement and mandating who gets what percentage, at least my

9    understanding of the law, it's not valid.

10              THE COURT:  Where do you get that understanding?

11              MR. LEE:  For example, under the Shear case, 297

12   F.R.D. 114, 125 (S.D.N.Y. 2014), it cites a New York Department

13   of Labor opinion RO-08-0049, and it the quote is "For a

14   voluntary tip pooling arrangement to exist, it must be

15   undertaken by employees on a completely voluntary basis and not

16   be mandated or initiated by employers and then employers can

17   take no part in the organization or the conduct of the tip

18   pool."

19              THE COURT:  So what are you alleging happened here?

20              MR. LEE:  So what I am alleging happened here is that

21   the employers, they set the tip pool, they set the point

22   system, and everybody just had to do that, and that is invalid.

23              THE COURT:  What do you base that allegation on?  You

24   are saying that, and I will take it whether or not separately

25   whether or not it can be a "voluntary pool."  You are not

E946loza

1    saying that every single employee that if your client objects

2    that there cannot be a tip pooling arrangement even though all

3    the other employees agree.  You are not saying that?

4              MR. LEE:  Well, what I am saying is --

5              THE COURT:  You have to answer my question.  You are

6    not saying that your client gets a veto over whether or not the

7    other employees will have a tip sharing arrangement?

8              MR. LEE:  Sure.

9              THE COURT:  He does?  Wait a minute.  I want to make

10   sure I understand you.  You are telling me that if before your

11   client gets there there are 10 employees and all 10 employees

12   agree to a tip sharing arrangement, your client shows up, your

13   client is hired to work, he knows the employees are already

14   agreed to a tip sharing arrangement, and he says, I don't like

15   that arrangement, no more tip sharing now that I am a worker

16   here, do you think he has a right to do that, that he can veto

17   the tip sharing arrangement?  I will change the numbers.  There

18   were nine and now he is the 10th employee.  Nine employees

19   agree there will be tip sharing arrangement, your client says

20   he doesn't agree so the employer has to dissolve the

21   arrangement?

22             MR. LEE:  That is not my argument.  The issue is who

23   the employees are agreeing with.

24             THE COURT:  The employees, other than your client, is

25   forced into a tip sharing arrangement; is that what you are

E946loza

 1    claiming?

 2              MR. LEE:  The issue is this --

 3              THE COURT:  You keep saying the issue.

 4              MR. LEE:  Do I know if other people disagreed?  I

 5    don't know if other people have disagreed.

 6              THE COURT:  How can you make an allegation that it is

 7    an illegal tip agreement being forced upon them if you can't

 8    say the majority of the employees didn't agree to it?

 9              MR. LEE:  Because there was something that was

10    mandated by the employer.

11              THE COURT:  Why do you say that?  You don't know

12    whether the employees agreed to it.  How do you allege it was

13    mandated by the employee?

14              MR. LEE:  My plaintiff told me.

15              THE COURT:  Told you what.

16              MR. LEE:  The employer set the tip pool.

17              THE COURT:  How does he know that?  I assume there was

18    a tip pool before he got there.

19              MR. LEE:  Sure.

20              THE COURT:  How does he know that?  Is he saying the

21    employer forced that on employees and the employees didn't

22    agree to this?

23              MR. LEE:  Well --

24              THE COURT:  That is what forcing means?

25              MR. LEE:  I will give you an analogy, your Honor.

E946loza

1    Let's say I have an office and I tell all the employees you

2    have to have lunch at 1:00.  That is mandated by me.

3              THE COURT:  It depends on whether all the employees

4    say that is when we want to have lunch.  If they say that is

5    when we want to have lunch, it is not being forced.

6              MR. LEE:  That is the difference between me saying,

7    all you people you eat lunch at 1:00.

8              THE COURT:  So you are alleging that the employees

9    didn't agree to the tip credit?

10             MR. LEE:  What I am alleging --

11             THE COURT:  You have to allege that, don't you?  You

12   can't say they forced that on them.  You have to say the

13   employees did not agree to share their tips in this manner,

14   that even though they didn't agree to it, the employer made

15   them do that.  That is not what you are saying.

16             MR. LEE:  Well, what I am saying is the employer

17   established the tip pool.

18             THE COURT:  Did the employees agree to it?

19             MR. LEE:  Well, the employers are not supposed to

20   establish a tip pool.  They are not supposed to have anything

21   to do with the tip pool.

22             THE COURT:  You can't have it both ways.  You cannot

23   say they have nothing to do with it but the employee is the one

24   who did.

25             MR. LEE:  The employers are not supposed to do

E946loza

| | |
|---|---|
| 1 | anything regarding the tip pool.  They are not supposed to set |
| 2 | it.  They are not supposed to take part in it.  They are not |
| 3 | supposed to mandate it or initiate it. |
| 4 | THE COURT:  The employer? |
| 5 | MR. LEE:  Yes.  The employer is not supposed to do |
| 6 | anything regarding the tips.  That is something that -- |
| 7 | THE COURT:  That is what I am trying to understand. |
| 8 | Are you trying to say the employees did not agree to the tip |
| 9 | pool? |
| 10 | MR. LEE:  That's right. |
| 11 | THE COURT:  What makes you say that? |
| 12 | MR. LEE:  Because it was mandated by the employer. |
| 13 | THE COURT:  Tell me in what way it was mandated by the |
| 14 | employer. |
| 15 | MR. LEE:  They said -- waiters have to be -- tipped |
| 16 | employees share the tips. |
| 17 | THE COURT:  That is what they told your client when he |
| 18 | arrived because there was already a tip pool in effect? |
| 19 | MR. LEE:  That was said by the employees. |
| 20 | THE COURT:  How do you know that? |
| 21 | MR. LEE:  That's an issue of fact. |
| 22 | THE COURT:  Who says that?  What is your good-faith |
| 23 | basis to allege that before your client got there and knew |
| 24 | anything that what was going on in the restaurant what |
| 25 | knowledge does he have to allege that prior to his arriving |

29

E946loza

 1    there that the employer forced these employees before he got

 2    there to participate in a tip pool?

 3        MR. LEE:  When he arrived to work, his employer told

 4    him how he was allocated his tips.

 5        THE COURT:  That would be the case whether or not they

 6    agreed to it or when he got there?  Even under your scenario if

 7    you said five years ago my client didn't work there, five years

 8    ago all the employees got together and said we want to do a tip

 9    pool and they all agreed to that, five years later your client

10    shows up, what is your client going to be told by the employer?

11    Your client is going to be told exactly what he was told.

12    There is a tip pool here and you have to participate in it and

13    this is what the tip pool is.

14        MR. LEE:  That is different, your Honor.

15        THE COURT:  How is that different?

16        MR. LEE:  Then if your scenario is correct then he

17    shows up at work and he is informed by the tipped employees

18    what the tip pool arrangement is.  He is going to work and he

19    is being told by his employer that is what was mandated and

20    that is what he needs to follow.

21        THE COURT:  He can say who it was mandated by.  The

22    tip pool was in effect when he arrived.  So it is obviously

23    something he has to participate in, isn't it?  As I say they

24    cannot nine employee who agree to a tip pool and your client

25    shows up and the employer says, Look, you are showing up and

E946loza

there is a tip pool here and this is how you get paid, and he

can say, No, I am not going to accept that and you have to

dissolve the tip pool.  Your client doesn't have the right to

do that.  Your client has the right to say I understand there

is a tip pool.  I want to participate.  I want to get employed

and I am going to join the tip pool because that is the way

everyone gets paid.  It doesn't tell me one way or another

whether it was forced on the employees.  What basis do you say

it was forced on the employees?  Would you recognize and

concede there was a tip sharing arrangement prior to your

client arriving?

            MR. LEE:  Sure.

            THE COURT:  How does your client know how it was

created?

            MR. LEE:  Your Honor --

            THE COURT:  What allegation can you make on his

personal knowledge or any knowledge about whether or not it

was -- when was created and how it was created and by whom it

was created?

            MR. LEE:  Well, I guess the issue would be if he comes

to work and the tip pool is not something that is mandated by

the employer but just mandated by his coworkers that everybody

else had agreed to, then it is a coworker arrangement.

            THE COURT:  What would be employer have said

differently?  We have a tip pool and you have to participate?

E946loza

<table>
<tr><td>1</td><td>MR. LEE:  No.  The alternative -- that is one scenario</td></tr>
<tr><td>2</td><td>and the employer says he goes in and he understand that is the</td></tr>
<tr><td>3</td><td>tip pooling arrangement that has been set by--</td></tr>
<tr><td>4</td><td>THE COURT:  The employer has an obligation to say</td></tr>
<tr><td>5</td><td>something.  That is the whole premise of your complaint.  The</td></tr>
<tr><td>6</td><td>employer has an obligation to tell him when he arrives that,</td></tr>
<tr><td>7</td><td>look, there is a tip pool and we're going to take the tip</td></tr>
<tr><td>8</td><td>credit.  This is how you are going to get paid.  We have the</td></tr>
<tr><td>9</td><td>right because there is a tip pool if we give you the proper</td></tr>
<tr><td>10</td><td>notice to take the tip credit against the minimum wage.  That</td></tr>
<tr><td>11</td><td>seemed to be saying in this complaint.  Leave aside the</td></tr>
<tr><td>12</td><td>arguments in the paper, in this complaint you seem to allege</td></tr>
<tr><td>13</td><td>that your client -- let's move onto the main issue.  You claim</td></tr>
<tr><td>14</td><td>that your client was not given notice that the employer was</td></tr>
<tr><td>15</td><td>going to take the tip credit.  That is the primary claim in</td></tr>
<tr><td>16</td><td>your lawsuit.</td></tr>
<tr><td>17</td><td>MR. LEE:  Yes.</td></tr>
<tr><td>18</td><td>THE COURT:  They have produced a document signed by</td></tr>
<tr><td>19</td><td>your client which acknowledges that they are notifying him of</td></tr>
<tr><td>20</td><td>the tip credit.  My position is very simple in light of that</td></tr>
<tr><td>21</td><td>document, it is not a plausible allegation for him to make that</td></tr>
<tr><td>22</td><td>he was never notified of the tip credit.  He has got to explain</td></tr>
<tr><td>23</td><td>how it is that he claimed that he was not notified about the</td></tr>
<tr><td>24</td><td>tip credit when you -- are you denying that that is his</td></tr>
<tr><td>25</td><td>signature on the form?</td></tr>
</table>

E946loza

```
1               MR. LEE:  I am not.

2               THE COURT:  You have to give me under Iqbal and

3    Twombly, a plausible -- if you are not denying he received and

4    signed this document, then it is not a plausible allegation

5    that he did not receive the notice.

6               MR. LEE:  I can go through the exhibits.

7               THE COURT:  No.  I want you to go through your

8    complaint.  You cannot simply say he didn't receive the notice

9    because now you are saying you he didn't deny receiving the

10   notice.

11              MR. LEE:  I understand.  I wanted to refute the

12   invalidity of the documents they produced.

13              THE COURT:  You are right that I am not here to debate

14   the document.  Your task is very simple.  If you have a

15   different plausible explanation of why you claim that he didn't

16   receive notice when you are standing here acknowledging that he

17   received this document and signed this document, then you need

18   to put that allegation in the complaint.  You cannot just say

19   to me, I don't deny that he received this notice, I don't deny

20   that he signed receipt of this notice, but I am going to allege

21   in my complaint that he never received a notice.  That is not a

22   plausible allegation in light of what you just conceded to.

23   You have to explain to me in what way you are claiming he

24   didn't receive notice if in fact you are acknowledging that he

25   did receive the written notice and that he signed the receipt
```

E946loza

1    of the written notice.

2            MR. LEE:  Sure.  So for example one of them is undated

3    and the second one is dated on 2013 so he started his

4    employment in October 2012.

5            THE COURT:  That doesn't tell me whether he received

6    notice.  It may say something about when he received notice.

7    You don't claim that when he came to you -- let me say it

8    differently.  In what way do you claim that when he came to you

9    and said, Oh, I want to sue them, that he was unaware that he

10   had inadequate notice of what the proper procedures would be?

11           MR. LEE:  Well, here is the reality, your Honor, most

12   clients that come to me are not educated and they don't speak

13   English.

14           THE COURT:  That's not what you allege in this

15   complaint.  That is the problem.  You hit it right on the head.

16   You don't allege, one, that he doesn't speak English.  You

17   don't allege, two, that he didn't understand it.  You don't

18   allege, three, that he didn't read it.  You don't say that at

19   all.  You don't say anything about that.  Let put it this way:

20   You know I cannot assume based on that that if there is written

21   notice in English, plain English, and he signs receipt of that

22   notice and you acknowledge that he received it and he

23   acknowledged receiving it, you cannot make an argument that I

24   am supposed to assume that somehow he got inadequate notice

25   because he is speaks another language; right?

E946loza

| 1 | MR. LEE:  Well --

| 2 | THE COURT:  Are you claiming he doesn't read English?

| 3 | MR. LEE:  Yes.

| 4 | THE COURT:  Well, you don't claim that in this

| 5 | complaint.  That is fatal to your complaint.  Even if your

| 6 | papers you don't say that he didn't speak English.  You say

| 7 | that his native language was Spanish.

| 8 | Is English your native language?

| 9 | MR. LEE:  It is not any native language.

| 10 | THE COURT:  Why should I assume that you don't

| 11 | understand English?  You know that is not a reasonable

| 12 | assumption to make.  You are a very articulate, fluent person

| 13 | in English.  Just because you say to me your native language is

| 14 | not English, there is no assumption that I am supposed to make

| 15 | even if that was in the complaint, which it is not, there is no

| 16 | assumption that I am supposed to make that if I give you a

| 17 | document to sign in English that somehow I am supposed to

| 18 | assume that you don't understand it.

| 19 | MR. LEE:  They actually provided his notice in

| 20 | Spanish, one of them.  Their Risk Preventative Act is the

| 21 | Spanish version.  They recognize this person is a nonEnglish

| 22 | speaker.

| 23 | THE COURT:  No.  They recognize he is a Spanish

| 24 | speaker.  Your client doesn't communicate with you in English?

| 25 | MR. LEE:  That is correct.  I have a translator.

E946loza

1          THE COURT:  You clearly are not making the allegation

2    that he didn't receive a notice.  You are making the allegation

3    that he didn't receive adequate notice because they gave him

4    the notice in English?

5          MR. LEE:  That's correct.

6          THE COURT:  That's a different set of allegations.

7    That is not what is in your client.  Your complaint says he

8    received no allegation.  Nobody gave him anything.  So you have

9    to give me a different complaint.  That is not true.  You just

10   acknowledged to me what you said in the complaint.

11         MR. LEE:  I understand.

12         THE COURT:  The basis of your claim that he didn't

13   receive notice is not true.  It is not a plausible allegation

14   because it is not true.

15         MR. LEE:  I understand, your Honor, but here is the

16   reality of working with many of these individuals --

17         THE COURT:  I know the reality.

18         MR. LEE:  They don't remember.  They don't remember

19   what they signed.

20         THE COURT:  Not remembering is not a basis on which

21   one can sue.  If I don't remember who ran me over with a car, I

22   can't pick anybody off the street and say I want to sue you.

23   You have to give me some factual allegations based on what you

24   do know.  What we don't know are things that we don't

25   experience personally and things that we cannot remember.  So

E946loza

1    if you tell me that he doesn't know it or can't remember it,

2    then you don't have a sufficient basis for him to make a

3    good-faith allegation to that effect.

4                MR. LEE:  Your Honor, that is what discovery is for.

5                THE COURT:  No.  That is not what discovery is for.

6                MR. LEE:  People remember certain things and then --

7    because defendants are supposed to the ones that keep all the

8    documents.  The employee has nothing.

9                THE COURT:  Tell me what the nature of your allegation

10   is with regard to proper notice?  If it is not as you allege

11   that he never received any notice, is what you think that you

12   can base your claim on is the notice they gave him was not in

13   Spanish so that is what makes it inadequate?

14               MR. LEE:  That is one of them, your Honor.  The other

15   one is that the defendants did not inform the plaintiff that he

16   is entitled to keep all the tips except those shared in a valid

17   tip arrangement.  That is under Reyes v. Sofia Fabulous Pizza

18   Corp.

19               THE COURT:  You are not making an accusation that they

20   skimmed his tips?

21               MR. LEE:  I am not saying that.

22               THE COURT:  You are not making an accusation that he

23   didn't receive all of his tips?

24               MR. LEE:  That's right.  It is a notice requirement.

25               THE COURT:  So you are saying that even though they

E946loza

1   did nothing wrong in terms of distributing the tips because

2   they didn't tell him specifically you really are receiving all

3   the tips you are entitled to then that is fatal to the notice

4   and they can sue him for a wage violation.

5           What else would be entitled to in terms of wage?  You

6   are not saying that he didn't receive adequate wages.  You want

7   to say that the wages he received are not adequate because they

8   didn't give him the proper notice.

9           MR. LEE:  That's right.

10          THE COURT:  If they had given him the proper notice

11  you are saying there is nothing they did wrong in terms of what

12  they paid him, how they paid him, they weren't cheating him out

13  of money.  If this notice was adequate, is there anything that

14  they did was wrong?

15          MR. LEE:  Except for the tip pooling.  There were also

16  claims for --

17          THE COURT:  I am not sure what your other claims are

18  the way you laid it out.

19          MR. LEE:  There was also --

20          THE COURT:  You say violation Count One is a violation

21  of the Fair Labor Standards Act.  That does not tell me the

22  nature of the violation.  In what way do you say they violated

23  the Fair Labor Standards Act?

24          MR. LEE:  Well, again, it is the tip notice, right, is

25  a federal violation.

E946loza

1          THE COURT:  Well, they gave tip notice.

2          MR. LEE:  Invalid tip notice.

3          THE COURT:  In what way was it invalid?

4          MR. LEE:  Because they didn't properly inform him of

5   what his overtime tip credit rate was.

6          THE COURT:  Where is there a requirement that they

7   specifically inform them of the overtime rate?  If you tell me

8   that the hourly rate is $7.25 and they give you an example that

9   the formula for the hourly rate 7.25 minus the tip credit

10  equals your hourly wage so if your hourly wage is $7.25, the

11  tip credit if it is turns out to be $2.25, your hourly rate

12  will be $5.  If you understood this form --

13         MR. LEE:  Which one are you referring to?

14         THE COURT:  Exhibit A.  If your client understood

15  English and read this form, it informs him that the minimum

16  wage is $7.25 an hour, is it your argument that it is

17  inadequate notice unless it informs him of what his overtime

18  hourly rate is?

19         MR. LEE:  He has no idea what his hourly time rate is.

20         THE COURT:  Where do you get that?  What requirement

21  in the of Fair Labors Standards Act say that you have to spell

22  out --

23         MR. LEE:  I think all employees you have to tell them

24  their regular rate and overtime rate for all employees.

25         THE COURT:  But you are claiming that he wasn't

E946loza

1     informed that he was going to get time and a half.

2                 MR. LEE:  He would have no idea what his rate is, your

3     Honor.

4                 THE COURT:  I am asking you first before you get to

5     the rate, you are not claiming that he didn't understand that

6     he was going to get time and a half of overtime.  You are just

7     arguing that he didn't know what was where he was going to come

8     out?

9                 MR. LEE:  They don't tell him.

10                THE COURT:  He didn't know he was going to get time

11    and a half of overtime?

12                MR. LEE:  Honestly, your Honor, before I did this, I

13    used to work in a big law firm, I had no idea what overtime

14    was.

15                THE COURT:  I am not asking you about you.  I am

16    asking you what your clients knew.

17                MR. LEE:  My secretaries used to tell me about getting

18    overtime pay and I was like whatever.

19                THE COURT:  That doesn't mean your employer had wage

20    violations.  You want to make it a federal lawsuit.  That's the

21    difference.  You may not have understood it.  I may not

22    understand it as well.  That is not the point.  The point is

23    what is the legal requirement of the employer.  I know of no

24    legal requirement that says that with regard to the tip credit

25    that it's required that you tell them both what the hourly rate

E946loza

1      is, what the overtime rate is and what the holiday rate is with

2      regard to giving them information about what would entitle the

3      defendant to the tip credit.  What entitles the defendant to

4      the tip credit is notice that they are going to take the tip

5      credit, that there is a pool and that the pool as long as the

6      base wage and the tips add up to more than the hourly rate that

7      meets our requirement with regard to paying a minimum wage so

8      therefore that means we get the "tip credit."  What other

9      requirement is there in order for them to take the tip credit

10     with regard to overtime?

11             MR. LEE:  Your Honor, in regards to the overtime issue

12     about the amount of disclosure required to an employee, I

13     understand what you are saying in reference to where they

14     mention 7.25 minus the 2.25 tip credit so your regular hourly

15     rate is $5.  I am saying --

16             THE COURT:  Even you and I can understand that.

17             MR. LEE:  Yes.  I also understand your Honor's

18     discussion regarding the overtime rate basically a person can

19     say, okay, I will get time and a half on my hourly.

20             THE COURT:  You don't have to be a rocket scientist.

21             MR. LEE:  But you need to be a rocket scientist

22     because it is confusing.  Your regular Joe on the street when

23     he sees that his regular hourly rate is $5 and his grandmother

24     and uncle is telling you should get overtime on that, he is

25     thinking he should get 7.50.  That is the wrong rate.  He

E946loza

1    should be 7.25 times 1.5, which is 10.88 minus the 2.25.

2           THE COURT:  You are absolutely right.  If they are not

3    paying you that, you have a lawsuit.  If they are paying you

4    that, you don't have a lawsuit simply because nobody told you

5    that the overtime rate is, whatever, $12.30.

6           MR. BECKMAN:  The other way, $8.30.  You reduced it.

7           THE COURT:  Well, that's not true.  I am talking about

8    the overtime rate without a tip credit.

9           MR. BECKMAN:  10, your Honor.

10          MR. LEE:  10.88 minus 2.25 so it is 8.26.

11          THE COURT:  Right.  You may have an overtime violation

12   if I am not told that I get time and a half and I don't receive

13   time and a half; but you don't have a Fair Labors Standard

14   violation with regard to the tip credit simply because you

15   didn't put in your notice what the number was for overtime.  I

16   never heard that argument.

17          MR. LEE:  Again, your Honor, their notice is undated

18   and second notice is dated.

19          THE COURT:  You don't say that negates the legitimacy

20   of the notice?

21          MR. LEE:  It is totally effective from when they

22   provide that notice.  To let's say in 2012 he didn't receive

23   any notice in 2012 then.

24          THE COURT:  When do you claim that he received the

25   notice?

E946loza

1          MR. LEE:  I don't know when he received it.  He didn't

2     think he ever received it.  There is a notice here and only one

3     of them is dated February 2013.  It is an issue of fact.

4          THE COURT:  What difference does it make?  The problem

5     is what difference does it make?  You don't claim a wage

6     violation.  You don't claim that he didn't receive notice.  Now

7     you want to argue that, well, because it is undated, we don't

8     know when he received it.  Let's put it this way:  You would

9     acknowledge that you don't have a claim on the timing after the

10    period of time that he received the notice.

11         MR. LEE:  I still think it is invalid.  We have a --

12         THE COURT:  It is not invalid.  I don't have to

13    consider the timing of it.  You can't argue today that because

14    he didn't receive the notice on day one, he has got a claim

15    today.  He did receive notice.  We know at least he received

16    notice as of which date.

17         MR. LEE:  2013.

18         THE COURT:  How far back are you trying to go?

19         MR. LEE:  He started his employment in October 2012.

20         THE COURT:  October 2012 to when?

21         MR. LEE:  He worked until May 23rd.

22         THE COURT:  See the problem is that that your argument

23    cannot morph.  That is not what you say in your complaint.  If

24    you want him to say that I didn't receive notice until X date,

25    then that's fine.  Let's debate about whether or not about the

E946loza

| 1 | time that he was paid that he didn't receive the notice that |

1    time that he was paid that he didn't receive the notice that

2    timing is important.  You have to acknowledge that unless he

3    says that -- quite frankly, I am not sure that you have a

4    timing argument regardless.  Your arguments would be valid

5    arguments if the plaintiff was inadequately paid under a tip

6    credit.  You don't say he was inadequately paid if the tip

7    credit applied.  You are trying to say the tip credit doesn't

8    apply because these are the technical things that they didn't

9    do in order to notify him appropriately.

10            MR. LEE:  That's correct.

11            THE COURT:  And timely.

12            MR. LEE:  That's correct.

13            THE COURT:  So you don't have a compelling a case as a

14   person that says, you know what, these guys haven't even been

15   paying me the rate.  They have been paying me an inadequate

16   rate.  They are taking the tip credit but there is no tip

17   credit to take because they were not getting those tips, or

18   some argument that they are being paid inadequately.  You don't

19   say that if they give the proper notice, you don't say that

20   your client should have been paid any differently than how he

21   was paid if he had proper notice.

22            MR. LEE:  Well, I do have I call-in pay, which is that

23   he would be sent home without his pay if they weren't busy.

24            THE COURT:  I am not sure --

25            MR. LEE:  Paragraph 30, your Honor.

E946loza

1        MR. BECKMAN:  I don't mean to interrupt, but we didn't

2   move on that part of the motion, your Honor.

3        THE COURT:  That is why I asked you originally and

4   that was the thrust of my question whether you say you were

5   moving to dismiss all claims.  You said yes and now you are

6   telling me no.

7        MR. BECKMAN:  I apologize.  I forgot.

8        THE COURT:  What else is left?

9        MR. BECKMAN:  That was the only other claim.

10       THE COURT:  So that is why I asked that question.

11       MR. LEE:  I have one more thing, which is the wage

12  statement.  Even though your Honor and I differ on the

13  interpretation of the wage statement and whether it is

14  corrected notice for the amount of tip credit, they don't

15  provide the address of the employer, which is something that is

16  supposed to be provided.

17       THE COURT:  Wait a minute.  You are telling me there

18  is a requirement that if I don't put on the wage statement the

19  address of the employer then I am not entitled to the wage

20  credit?

21       MR. LEE:  Then you get a penalty of up to $2,500.

22       THE COURT:  Penalty?

23       MR. LEE:  Up to $2,500.  That's the not a tip credit

24  claim.  That's a separate claim.

25       THE COURT:  That money isn't paid to the employee, is

E946loza

1    it?

2             MR. LEE:  It is paid to the employee.

3             THE COURT:  Paid to the employee for what because you

4    didn't put the address of the company?

5             MR. LEE:  Yes.

6             THE COURT:  What claim is that?

7             MR. LEE:  That is under the Wage Theft Prevention Act.

8             THE COURT:  What claim is that in the complaint?

9             MR. LEE:  Under paragraph 29.

10            THE COURT:  Where does it say that?  It is not in

11   paragraph 29.

12            MR. LEE:  It just said it doesn't provide a proper

13   wage statement.

14            THE COURT:  It says it doesn't provide a proper wage

15   statement in these ways.  You never say you are claiming that

16   they didn't put the address of the employer on the actual

17   claim.  I am hearing this for the first time.  That isn't in

18   this complaint.  They failed to satisfy the requirement under

19   New York Labor law because such tip credit was never included

20   in any wage statement to tip employees.  Defendants also failed

21   to provide proper wage notices in the beginning of employment

22   of plaintiff and class members and annually thereafter.  Those

23   are the ways that you said they did that.  You didn't say they

24   didn't put the address of the employer and that is what I am

25   suing them for.  Is that what you meant?

E946loza

1          MR. LEE:  What I meant is to include any inadequate --

2          THE COURT:  You would agree that you cannot say that

3     they violated the New York Labor Law these three ways and then

4     say that at the end of this case you want to prove that they

5     did it in seven other ways.  You can't do that.  You have to

6     make a factual allegation to you put them on notice.

7          MR. LEE:  I understand.

8          THE COURT:  In what way you have put them on notice

9     that you are assuming they didn't put the address.

10         MR. LEE:  I am letting them know that the wage

11    statement is not proper for whatever reason.

12         THE COURT:  I don't know if you are suing them because

13    it was typographical error that you say is improper.  You have

14    to allege a fact.  You can't say it was improper.  You say ways

15    that you say it is improper.  You don't say anything about an

16    address.

17         MR. LEE:  I understand, your Honor.  One other point

18    which is the last sentence of the same paragraph 29.  It says,

19    Defendants failed to provide proper wage notices at the

20    beginning of employment of plaintiff and annually thereafter.

21    So at the very least that claim also holds water because based

22    on their dating of the Wage Deprivation Act notice it was in

23    the middle of his employment period.

24         THE COURT:  I am trying to understand if it is your

25    position -- I don't understand that to be the law.  It is your

E946loza

 1    position that if I started on January 1st --

 2               MR. BECKMAN:  May I say something, your Honor.

 3               THE COURT:  No.  I started on January 1st.  I didn't

 4    get the notice.  I got the notice March 1st.  I also worked for

 5    five more years.  You are saying that that totally negates my

 6    being able to take the credit for any period of time?

 7               MR. LEE:  Well, it at least negates it for the first

 8    two months.

 9               THE COURT:  That's a different argument.  That is not

10    the argument you made here.  If you want to say it negates it

11    until you got it, that is one thing but you don't even say you

12    got it.  You got to give me something that tells me why your

13    client is saying that he didn't get notice if I have a notice

14    and didn't give timely notice.  If you have a notice that he

15    signed, you have to give me some explanation for that in the

16    complaint.

17               MR. LEE:  I understand.  Can I also just address one

18    more point, your Honor?

19               THE COURT:  Yes.

20               MR. LEE:  The final point, and your Honor had a

21    different interpretation as I did in regards to the earning

22    statements, as a matter of public policy it is important that

23    an employee knows what he is getting paid.  It is important for

24    him to know what is being taken out of his pay stubs.  So the

25    policy has always been if you are going to deduct something

E946loza

whether it is a housing allowance or meal allowance or a tip

credit allowance, the employee has to know what is being

deducted from his compensation.  Just like when you are working

at a company and they take tax withholdings, you need to know

what you are getting paid.

THE COURT:  Mr. Lee, isn't it clear from this document

that what is being deducted from his pay is $2.25?

MR. LEE:  Well, it is not clear.

THE COURT:  Tell me any other interpretation of what

was deducted from his pay.  If his base rate is $5, the minimum

wage is 7.25, isn't it clear that they are talking $2.25 from

his base rate?

MR. LEE:  It may be.

THE COURT:  Is there any other possibility?

MR. LEE:  Your Honor, it may be clear or it may not be

clear, but that is kind of a subjective argument.

THE COURT:  Well, no, it is not a subjective argument

if that is what the wage statement says.

MR. LEE:  The form doesn't say that.  The form that

they provided to the Court by the way, your Honor, is a

summary, an earning summary that the employee does not see.  So

what the Court is looking at is something that the employee

never received.

THE COURT:  That is why I asked you.  I asked you

whether there was a dispute whether or not he received periodic

E946loza

1  wage statements and you said no.

2           MR. LEE:  There is not a dispute that they received

3  pay stubs.

4           THE COURT:  It says the rate is $5; right?

5           MR. LEE:  That's right.

6           THE COURT:  The minimum wage is 7.25.

7           MR. LEE:  It doesn't say his minimum wage rate.  It

8  doesn't say that.

9           THE COURT:  It does.  It says the hourly rate is 7.25.

10  It said in the form that he signed when he first came to work.

11  Are you claiming that he was never notified or knew that the

12  minimum wage rate was 7.25?  Because that is what the form says

13  when he was handed it, whenever he was handed it.

14           MR. LEE:  Again, he doesn't speak English.

15           THE COURT:  That doesn't tell me whether he knows he

16  did not notify him or whether he didn't know the rate.  It says

17  7.25.  You say this is the rate for what column?

18           MR. LEE:  For the spread of hours.

19           THE COURT:  Spread of hours?

20           MR. LEE:  Yes.

21           THE COURT:  Is there any reason to believe that the

22  spread of hours rate is different than the hourly rate?

23           MR. LEE:  He could be paid $8.

24           THE COURT:  How would the hourly rate be 7.25.

25           MR. LEE:  He might be confused.

E946loza

```
1          THE COURT:  You didn't say he was confused.  You said
2    he wasn't notified.  It says that it is 7.25.  The hourly rate
3    is 7.25.  When he first received the form, it says the hourly
4    rate of 7.25.  Is there reference to any other hourly rate
5    other than 7.25?
6          MR. LEE:  Yeah.  It says $5 an hour.
7          THE COURT:  That's the rate that they paid him the tip
8    rate.  So you say the problem is that they don't tell you how
9    much money they are withholding.  They are withholding the
10   2.25, and $5 which is 7.25; right?
11         MR. LEE:  Yes.  The only thing is the clarity.  I
12   guess the issue of debate is the clarity of the disclosure.  My
13   position is that at very least --
14         THE COURT:  You say his damages are what?
15         MR. LEE:  The damages?
16         THE COURT:  Tell me what his damages are.  Are you
17   saying he just worked so now you want to totally negate any tip
18   credit and make them have to pay the base rate of 7.25 and now
19   give him the difference between $5 and 7.25?
20         MR. LEE:  That's right.
21         THE COURT:  You are saying they are doing that
22   because -- you are not accusing them of that.  Your argument
23   are pretty technical.
24         MR. LEE:  They are pretty technical.
25         THE COURT:  From the cases I have seen, and I have
```

E946loza

1    seen a lot, this is not the most egregious violation that you

2    or I have seen.

3          MR. LEE:  I understood.

4          THE COURT:  I have seen some places and you have seen

5    them too, particularly restaurants where the clients are simply

6    totally abused.  The employers keeping that knowledge away from

7    them, employers intimidating them, employers not paying them

8    the rate even under a credit, or the employer surreptitiously

9    skimming it or improperly taking the credit without the

10   employees knowing.  You don't accuse them of doing any of those

11   bad things.

12         MR. LEE:  That's correct.  In terms of the wage

13   statement what they should be doing is let's say they made a

14   thousand dollars this week, they should have told them, We're

15   deducting 2.50 so you are getting 5.50 for your comp.  He needs

16   to know the amount of credit as being claimed for that period

17   just as he knows --

18         THE COURT:  Again, I don't know whether or not you are

19   not raising the issue whether or not the information on here is

20   the same information he received.  I didn't think that that was

21   in dispute.  It says his cash pay is $275.55.  It says that his

22   reg tip pay is $200.  What is missing?

23         MR. LEE:  What is missing is the amount of allowance

24   that is being claimed so 2.25 times 40 plus.

25         THE COURT:  The amount of the allowance is the

E946loza

| | |
|---|---|
| 1 | difference between 200 and 275; right? |
| 2 | MR. LEE:  I don't think so. |
| 3 | THE COURT:  What is the allowance?  You mean the tip |
| 4 | credit? |
| 5 | MR. LEE:  It would 2.25 times 47.93.  It's $107. |
| 6 | MR. BECKMAN:  And 84 cents. |
| 7 | THE COURT:  That is right on there. |
| 8 | MR. LEE:  But -- |
| 9 | THE COURT:  It says 107.84. |
| 10 | MR. LEE:  But nobody knows what that is.  His rate is |
| 11 | not $5. |
| 12 | THE COURT:  That's the minimum tip rate. |
| 13 | MR. LEE:  His rate should be 7.25. |
| 14 | THE COURT:  You just gave me a number that says he |
| 15 | wasn't informed of it and it is right on the form.  Is it the |
| 16 | exact number?  You are not saying they didn't give him that |
| 17 | number.  Now you are saying they didn't explain it to him |
| 18 | adequately.  What else is on here that should be on here? |
| 19 | MR. LEE:  Well, nobody knows.  They actually explained |
| 20 | minimum tip as something different earlier.  They don't even |
| 21 | know what it is.  I don't know what it is. |
| 22 | THE COURT:  What other number do you say should be on |
| 23 | this form is not on this form because the number you gave me is |
| 24 | on this form? |
| 25 | MR. LEE:  But nobody knows what that number means. |

E946loza

1    THE COURT:  That is a different question.  That is a

2  different question.  You first said that they didn't inform him

3  and I say well what didn't they inform him.  You said, The

4  difference.  I said, What should they have told him?  Then you

5  said, $107.  Then I said, They did say it is $107.

6    MR. LEE:  What they should have done is multiply his

7  gross pay by 7.25 and then subtracted out the credit allowance.

8    THE COURT:  Tell me what number would have shown up on

9  a wage statement that is not here?

10    MR. LEE:  His gross pay.

11    THE COURT:  Gross pay.  Isn't that $275.95?

12    MR. LEE:  I am not sure.

13    THE COURT:  I am not saying what is not on this form

14  that legally they were required to put on this form and if they

15  didn't put it on then you get to get back all of the tip

16  credit.  This is not the strongest argument.  Tell me what

17  number is missing?

18    MR. LEE:  The number that is missing is $376.

19    THE COURT:  How do you get 376?

20    MR. LEE:  7.25 times 40 and you take 10.88 times 7.93.

21    THE COURT:  Right.

22    MR. LEE:  So the first number is 298 plus 86 and that

23  gets you to 376.

24    THE COURT:  So you are saying they should have added

25  the 275.85 to the 68.40 and given him another number?

E946loza

<table>
<tr><td>1</td><td>MR. LEE:  They should tell him what his gross pay is.</td></tr>
</table>

1          MR. LEE:  They should tell him what his gross pay is.

2          THE COURT:  That is what his gross pay is.  His gross

3    pay is 275.65 plus 68.40; right?  That's the number you gave

4    me; right?

5          MR. LEE:  I don't think those numbers match, your

6    Honor.

7          THE COURT:  That is the number you gave me.

8          MR. LEE:  The number 376.28.

9          THE COURT:  376, where did you get that number?

10         MR. LEE:  725 times 40 plus 10.88 times 7.93.

11         THE COURT:  No.  That is not the right number.

12         MR. LEE:  That is the overtime hours.  It's 1.5 times

13   7.25 times the number of hours.

14         THE COURT:  No.  They gave him 8.6250 as the overtime

15   rate.

16         MR. LEE:  Oh, yeah.

17         THE COURT:  He worked 793 hours and they paid him

18   68.40 overtime on top of the.

19         MR. BECKMAN:  Your Honor, may I make one comment?

20         THE COURT:  Putting aside that I was terrible at math

21   and so I am will be useful to the calculation portion, I think

22   it is important to note that this entire set of calculations in

23   this discussion is really irrelevant because there is no

24   requirement under FLSA or to the New York Labor Law for

25   anything that he is asking for in any of these calculations.

E946loza

1    Wage statement requirements even under the New York Labor Law

2    do not require this kind of calculation and expression.  This

3    is all one big red herring and a long, long trip down the

4    rabbit hole.  We are not required under any regulatory scheme

5    for any employer to do any of this.  This is just extra stuff

6    he would like there to be.  There is no law anywhere that says

7    you have to place the overtime calculations the way he is

8    describing in the document, the pay stubs or the wage

9    statements.  It doesn't exist.

10           I would like to point your Honor to the regulations.

11   Page 9 of our brief -- page 8 and the regulation says,

12   Employer, one, may require a food services employee to

13   participate in the pool; and two, as you were discussing with

14   him, the wage statement has the numbers that both FLSA and the

15   New York Labor Law requires.  This is not required by anything.

16   So I don't mean to interrupt the discussion of which numbers

17   are right, but it is all a bit of a wasted effort.

18           MR. LEE:  Your Honor, it is not.  It is required.  I

19   can even give you the case cites.  I will provide it to the

20   court.  Under Padilla --

21           THE COURT:  What does it say?

22           MR. LEE:  It says an employer may validly take a tip

23   credit only if the employer provides wage tickets for each pay

24   period showing the amount claimed as part of the minimum way.

25           THE COURT:  Why isn't this showing me the allowances

E946loza

1   claimed?

2          MR. LEE:  It doesn't say anything about tip credit

3   allowance.

4          THE COURT:  Tell me the allowances claimed on that?

5          MR. LEE:  The allowances claimed would be, for

6   example, if you look at right-hand column it says "deductions,"

7   you see that is where the tip credit allowance should be.

8          THE COURT:  I don't understand what number you are

9   saying.  What is the allowance?

10          MR. LEE:  I will use easy numbers, your Honor.

11          THE COURT:  Tell me here.  I want to see if that

12   number exists.

13          MR. LEE:  They should be multiplying 7.25 times 40

14   plus 10.88 times 7.93.  That would get you his gross pay.

15   Under deductions they should multiply 2.25 times 47.93 and that

16   would show the amount of the deductions as being taken for this

17   pay period.  They don't do that.

18          MR. BECKMAN:  Your Honor, the case he just cited

19   doesn't in fact require any type or any particular type of

20   calculation.  It just said it has to provide the information

21   that is being provided here.  He is saying, well, this manner

22   or that way of saying it is better or worse.  That is not what

23   the law or even the case he is citing says.  The information

24   has to be there.  As your Honor has said on a dozen occasions

25   today, it is in these forms and information he received.  He is

E946loza

1   trying to impugn incredibly hyper-technical requirements that

2   don't exist under the federal or state.  The going back and

3   forth on the math on requirements that don't exist don't seem

4   like a good use of our time.

5              THE COURT:  Anything further?

6              MR. LEE:  No.  It is something I think is very clear,

7   your Honor.  Your regular Joe employee who has never gone to

8   college or even high school is getting a slip of paper that OT

9   tip, min tip and he has no idea what that means.

10             THE COURT:  Why should I assume that is your client?

11  He could be a MIT graduate.  I am not supposed to make these

12  kind of assumptions about who your client is or whether he

13  understood or what he knew.  I don't know how sophisticated or

14  unsophisticated he is.

15             MR. LEE:  I will save everybody some time and I am

16  happy to amend the complaint and make it more specific in light

17  of all the stuff we talked about.

18             THE COURT:  Mr. Lee, I am going to give you that

19  opportunity.  I will grant their motion to dismiss this

20  complaint.  I think this complaint is inadequate on what is the

21  primary allegation that your client didn't have notice at all

22  they were going to take a tip credit.  It is clear that you got

23  to give me a different explanation about why you say he didn't

24  know this.  Because it is not because they didn't give him

25  something that clearly could have told him that.

E946loza

| | |
|---|---|
| 1 | MR. LEE:  Understood. |
| 2 | THE COURT:  So if you have some further allegations to |
| 3 | make with regard to that, I am going to allow it.  I am going |
| 4 | ahead to give you leave to amend.  I am going to dismiss this |
| 5 | complaint. |
| 6 | MR. LEE:  Sure. |
| 7 | THE COURT:  To the extent that you re-allege or if you |
| 8 | intend to re-allege some of the related state claims, I will |
| 9 | let that supersede this and we'll proceed on the new complaint. |
| 10 | The question is whether these Fair Labor Standards Act claim |
| 11 | proceeds and what is the actual nature of the state law labor |
| 12 | law violations that you are alleging based on what facts, what |
| 13 | inadequacies that you are alleging. |
| 14 | MR. LEE:  Sure. |
| 15 | THE COURT:  Your allegation is that they didn't do -- |
| 16 | I forget what the one we were discussed that is not in the |
| 17 | complaint.  If they didn't do X, you will have to say they |
| 18 | didn't do X.  You cannot say they violated the New York Labor |
| 19 | Law and I will tell you later how they did it.  Tell me exactly |
| 20 | what you say makes them liable under the labor law, what |
| 21 | inadequacy exists.  I thought I knew what you were saying.  I |
| 22 | will give you leave to amend. |
| 23 | With that I want a letter, nothing more than a letter, |
| 24 | justifying and clearly citing to me statute, section, or |
| 25 | quotation of case law or reference to specific lines in cases |

E946loza

1   that would support the requirements that you are trying to put,

2   how technical requirements you are trying to put upon the

3   defendant, concerns of whether or not the notices are adequate

4   or inadequate.

5            MR. LEE:  Okay.

6            THE COURT:  Convince me that everything that they need

7   to sit down and give them a volume of material to try to make

8   sure that they analyze every which way the numbers that he is

9   giving as I say the simple math is supposed to tell you is

10  proper and timely then, look, this is how it works.  7.25 minus

11  tip equals the amounts that we're going to pay you, the rate

12  we'll pay you.  If you have a problem with that, you let us

13  know.  If the employee thinks you are not being paid that, you

14  should let the employer know and say, Wait a minute, my pay is

15  not what you said it was supposed to be given the notice that

16  you gave me.

17           So I don't find that a lot of these points that you

18  are making are compelling to say if that is the only deficiency

19  then that means that we tossed the baby out with the bath water

20  and they don't get a tip credit because they didn't put a

21  certain analysis or reference in a particular note.  So give me

22  the proposed amended complaint.  Give it to me within 30 days.

23  I will give you that much.  You can give me an explanation why

24  you think it is adequate and why you realize what you allege

25  and what you allege is new.  If you want to reference that in

E946loza

1    your letter, I will give them an opportunity to respond and I

2    will see if that is adequate.  At this point you have to

3    clearly -- both sides have to clearly designate the claims that

4    are still in dispute.  I will let those claims go forward to

5    the extent I understand what is still in dispute.  To the

6    extent that you can address the issues that we discussed and

7    the other side can make their point as to why it is inadequate.

8          MR. BECKMAN:  Your Honor, I want to understand the

9    procedure.  Are you contemplating that plaintiff provides you

10   with a letter and we respond to that letter and he puts in the

11   proposed complaint?

12         THE COURT:  Absolutely not.  I am contemplating within

13   30 days I will get a proposed amended complaint and a letter

14   explaining to me why this has addressed my concerns and how it

15   addresses the deficiencies that I found in his complaint.  You

16   can respond to that within 14 days.  Look at that complaint and

17   look into what explanations he has given and why those facts

18   make it inadequate.  You can respond to that and say, No, this

19   is no good because there is not such a requirement and/or the

20   allegations that he made are not plausible allegations to make.

21   As I say, I need some further allegations with regard to the

22   plaintiffs.  You have to say something about the notice I

23   received.

24         MR. LEE:  Understood.

25         THE COURT:  You cannot ignore it.  Look, I cannot

E946loza

1   accept a set of allegations that clearly are inconsistent with

2   the real world facts.  You are in a situation now that you have

3   to explain away that notice.  You cannot just ignore it.

4           MR. BECKMAN:  Understood, your Honor.

5           THE COURT:  I cannot accept a good-faith plausible

6   truthful allegation that he received no notice.  You cannot

7   just say that.  I guess you can if you can explain to me even

8   though his signature is on it and it is or is not his

9   signature, then he signs something in blank, they gave him a

10  piece of paper and it it was in English and he signed it

11  anyway.  Give me some plausible explanation.  This is not one

12  of those cases where the employer has surreptitiously cheated

13  the employees.  That is not the nature of your claim.

14          MR. LEE:  That's right.

15          THE COURT:  If you want to be technical about it, I

16  will hold you to the technical requirements.  If you are right

17  technically they violated the law based on the facts that you

18  allege then the case goes forward and those claims go forward.

19  You will have to demonstrate to me that is truly the

20  requirement and that you truly articulated the deficiency and

21  in the notice and the knowledge that was required to be given

22  to your client by the employer.

23          MR. LEE:  Thank you, your Honor.

24          THE COURT:  I think we have a date.  February 12th is

25  the next calendar date.  I will leave the next date on.  The

E946loza

 1   next conference is February 12th.  When I get this in the next

 2   30, 45 days, I will go ahead and rule one way or another

 3   whether or not the claims are sustainable and then you can go

 4   forward with discovery.  You can talk about that anyway because

 5   it sounds like there will be some minor claims that are going

 6   to remain.  Obviously if the major claims go away, it may be a

 7   case that is worth a quick settlement discussion.

 8           MR. BECKMAN:  Does your Honor contemplate oral

 9   argument on the next proposed amended complaint?

10           THE COURT:  No, I do not.  Make sure your letters

11   clearly indicate how you say that it makes this complaint

12   sufficient and how you say it clearly is still insufficient.

13           MR. BECKMAN:  Will do.

14           MR. LEE:  Thank you, your Honor.

15           MR. BECKMAN:  Thank you, your Honor.

16                              o0o

17

18

19

20

21

22

23

24

25